## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | |
| AMC INVESTORS, LLC, | ) | Chapter 7 |
| | ) | |
| Debtor | ) | Case No. 08-12264 (CSS) |
| ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾ | ) | |
| | ) | |
| In Re: | ) | |
| | ) | |
| AMC INVESTORS II, LLC, | ) | Chapter 7 |
| | ) | |
| Debtor | ) | Case No. 08-12265 (CSS) |
| ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾ | ) | |
| | ) | |
| EUGENIA VI VENTURE HOLDINGS, LTD., | ) | |
| ON BEHALF OF AMC INVESTORS, LLC | ) | |
| AND AMC INVESTORS II, LLC, | ) | |
| | ) | |
| | ) | Adv. Case No. 11-52317 |
| | ) | Adv. Docket Nos.: 145, 149 |
| Plaintiff, | ) | |
| | ) | Adv. Case No. 11-52318 |
| v. | ) | Adv. Docket Nos.: 101, 105 |
| | ) | |
| MAPLEWOOD HOLDINGS LLC, | ) | |
| MAPLEWOOD MANAGEMENT LP, | ) | |
| MAPLEWOOD PARTNERS LP, | ) | |
| ROVERT V. GLASER, AND ROBERT J. | ) | |
| REALE | ) | |
| | ) | |
| Defendants. | ) | |
| ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾ | ) | |

## <u>OPINION</u>[1]

| | |
|---|---|
| MORRIS, NICHOLS, ARSHT | RICHARDS, LAYTON & FINGER, P.A. |
| & TUNNELL LLP | Mark D. Collins |
| Curtis S. Miller | Marcos A. Ramos |

---

[1] This Opinion constitutes the Court's findings of fact and conclusions of law, pursuant to Federal Rule of Bankruptcy Procedure 7052.

1201 North Market Street
Wilmington, Delaware 19899

Cory D. Kandstein
One Rodney Square
902 North King Street
P.O. Box 551
Wilmington, Delaware 19899

-and-

AKERMAN LLP
Brian P. Miller
Samantha J. Kavanaugh
James A. Bombulie
One Southeast Third Avenue
25th Floor
Miami, Florida 33131

-and-

GIBSON, DUNN, & CRUTCHER LLP
Mitchell A. Karlan
200 Park Avenue
50th Floor
New York, New York 10166


Jeremy L. Graves
1801 California Street
Suite 4200
Denver, Colorado 80202

Counsel for Defendants

Counsel for Plaintiff


Date: January 23, 2015

Sontchi, J. _____

## INTRODUCTION

Before the Court are two questions: 1) Whether, in light of earlier federal litigation, Plaintiff is entitled to summary judgment dismissing Defendants' affirmative defenses of claim and issue preclusion, and 2) Whether Plaintiff is entitled to summary judgment dismissing Defendants' timeliness defenses.  For the reasons discussed below, the Court finds that Plaintiff's arguments fail as a matter of law, and therefore will deny Plaintiff's motions for partial summary judgment.

2

## STATEMENT OF FACTS

This is an adversary proceeding alleging breach of fiduciary duty. The Plaintiff is Eugenia VI Venture Holdings, Ltd. ("Eugenia"), on behalf of AMC Investors, LLC and AMC Investors II, LLC (together, "Debtors"). At all relevant times, the Debtors were shareholders of AMC Computer Corp. ("Computer" or "AMC")[2]. Defendants MapleWood Holdings LLC, MapleWood Management LP, MapleWood Partners LP, Robert V. Glaser, and Robert J. Reale were officers, directors, and/or shareholders of Computer.

Plaintiff's claims stem from an Amended and Restated Credit Agreement between Eugenia and Computer dated January 2003. Pursuant to the Credit Agreement, Eugenia extended up to $16 million in credit, secured by Computer's working capital. Each of the Debtors executed an unconditional guaranty of Computer's obligations to Eugenia under the Credit Agreement.[3]

By May 2005, Computer was insolvent. Its board of directors voted to cease operations and approved an assignment for the benefit of creditors. In response, Eugenia notified Computer that it was in default under the Credit Agreement, accelerated the outstanding obligations, and demanded immediate payment. Eugenia also demanded payment from the Debtors under their guarantees.[4]

---

[2] AMC was dissolved in May 2005.

[3] *In re AMC Investors, LLC*, 406 B.R. 478 (Bankr. D. Del. 2009).

[4] *Id.*

Eugenia filed suit against the Debtors in New York State court to collect on the guarantees.  In July 2007, the court entered judgment in favor of Eugenia, awarding damages of approximately $10.7 million.  The Debtors appealed a portion of the award. Prior to oral argument before the appellate court, Eugenia filed involuntary petitions against the Debtors.[5]

In addition to the state court case, Eugenia brought seven related suits in the U.S. District Court for the Southern District of New York (the "District Court").  Suing both directly and derivatively on behalf of Computer, Eugenia alleged fraud and breaches of fiduciary duty in connection with AMC's default under the Credit Agreement. Defendants in these actions were officers, directors, and/or shareholders of AMC.

As to the fraud claims, which Eugenia brought in its individual capacity, the allegations were that defendants "fraudulently induced Plaintiff to execute the Credit Agreement with AMC by making false, material statements of fact, and by intentionally concealing material facts about AMC's financial situation and history."[6]  Further, "Defendants perpetrated, aided, and abetted fraud against Plaintiff by assisting, condoning, and directing the false statements made by subordinates to induce Plaintiff to lend more money to AMC…"[7] In its derivative action for breach of fiduciary duty, Eugenia alleged that "as members of AMC's Board of Directors, 'de facto' chairman of the Board, and majority shareholder, Defendants owed fiduciary duties to AMC, and

---

[5] *Id.*

[6] *In re Eugenia VI Venture Holdings Ltd. Litigation*, 649 F.Supp.2d 105, 108-109 (S.D.N.Y. 2008).

[7] *Id.*

4

breached those duties, causing AMC to expand its debt and deepen its insolvency to its detriment and ultimate collapse."[8]

Granting defendants' joint motion for summary judgment, the District Court dismissed all actions in a single judgment.  Specifically, Eugenia did not show either that its reliance on defendants' representations was reasonable, or that it was damaged by defendants' alleged fraud.  As to breach of fiduciary duty, plaintiff's claims failed, as a matter of law, because it could not prove damages.  The court reasoned that deepening a company's insolvency does not, on its own, demonstrate that the company has been damaged.  To survive summary judgment on breach of fiduciary duty, Eugenia had to show that defendants deepened Computer's insolvency in breach of a separate duty, e.g. fiduciary duty.  The facts that Eugenia introduced did not demonstrate breach of fiduciary duty.  Defendants' actions might have been consistent with reasonable business judgment, rather than bad faith.[9]

The Second Circuit affirmed the District Court's judgment in 2010: "We agree with the district court's conclusion that Eugenia's derivative claims for breach of fiduciary duty fail as a matter of law because Eugenia failed to raise a genuine issue of material fact as to damages."[10]  The one-page opinion continues,

> Eugenia failed to adduce sufficient evidence to raise a genuine issue of material fact as to damages despite arguing that defendants-appellees caused the destruction of AMC and 'rendered the company incapable of

---

[8] *Id.* at 109.

[9] *Id.* at 125-26.

[10] *Eugenia VI Venture Holdings, Ltd. v. Glaser*, 370 F. App'x 197, 199 (2d Cir. 2010).

paying its debts, and substantially increased those debts.' That is, at the time the parties entered the Credit Agreement, AMC was already insolvent. As a result, Eugenia cannot demonstrate that thereafter defendants-appellees' mismanagement rendered the corporation insolvent. Eugenia's derivative fiduciary claims thus fail.[11]

In addition, Eugenia's claims for fraud failed as a matter of law because "Eugenia suffered no out-of-pocket loss."[12]  The Second Circuit did not provide further grounds for its decision.

In July 2014, Eugenia brought this adversary complaint for breach of fiduciary duty on behalf of Debtors AMC Investors and AMC Investors II.  There are no accompanying claims for fraud. As to its claims for breach of fiduciary duty, Plaintiff alleges that "Computer's governance was marked by widespread improprieties and irregularities that contributed to Computer's deteriorating financial condition. Defendants actively initiated and directed these improprieties, or took no action to prevent or halt them."[13]  Many of the supporting facts are identical to those that were raised in pleadings before the District Court and the Second Circuit.

Answering together, Defendants raised the affirmative defenses of issue and claim preclusion.[14]  Defendants argued that the earlier federal litigation should bar the present

---

[11] *Id.*

[12] *Id.*

[13] Complaint, Adv. Pro. No. 11-52317, D.I. 1, Adv. Pro. No. 11-52318, D.I. 1 at ¶18.

[14] Defendants' Answer and Affirmative Defenses, Adv. Pro. No. 11-52317, D.I. 44, Adv. Pro. No. 11-52318, D.I. 45 at 11 (Twelfth and Thirteenth Affirmative Defenses).

action. In addition, Defendants asserted statute of limitations and *laches* defenses.[15]

Plaintiff then filed for partial summary judgment as to these defenses.[16]

## JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core

proceeding pursuant to 28 U.S.C. § 157(b)(2) and this Court has the judicial power to enter

a final order.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c), made applicable to these proceedings

pursuant to Federal Rule of Bankruptcy Procedure 7056, provides that summary

judgment should be granted if the movant shows that "there is no genuine dispute as to

any material fact and the movant is entitled to judgment as a matter of law,"[17] after

considering the "pleadings, depositions, answers to interrogatories, and admissions on

file, together with the affidavits."[18]

In deciding a motion for summary judgment, all factual inferences must be viewed

in the light most favorable to the nonmoving party.[19] After sufficient proof has been

---

[15] *Id.* at 10 (Ninth and Tenth Affirmative Defenses).

[16] Plaintiffs' Motion for Summary Judgment, Adv. Pro. No. 11-52317, D.I. 149, Adv. Pro. No. 11-52318, D.I. 105 (Twelfth and Thirteenth Affirmative Defenses); Adv. Pro. No. 11-52317, D.I. 145, Adv. Pro. No. 11-52318, D.I. 101 (Ninth and Tenth Affirmative Defenses).

[17] Fed. R. Civ. P. 56(a).

[18] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

[19] *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587–588 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

presented to support the motion, the burden shifts to the nonmoving party to show that genuine issues of material fact still exist and that summary judgment is not appropriate.[20] A genuine issue of material fact is present when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[21]

In order to demonstrate the existence of a genuine issue of material fact in a jury trial, the nonmovant must supply sufficient evidence (not mere allegations) for a reasonable jury to find for the nonmovant.[22]  The same principles apply in a bench trial where the judge is the ultimate trier of fact; the nonmovant must obviate an adequate showing to the judge to find for the nonmovant.[23]  In a situation where there is a complete failure of proof concerning an essential element of the nonmoving party's case, Rule 56(c) necessarily renders all other facts immaterial and mandates a ruling in favor of the moving party.[24]

Courts in this jurisdiction routinely decide matters of preclusion through summary judgment.[25]

---

[20] *Id.* at 587.

[21] *Anderson v. Liberty Lobby, Inc,* 477 U.S. 242, 248 (1986).

[22] *Olson v. Gen. Elec. Astrospace,* 101 F.3d 947, 951 (3d Cir. 1996).

[23] *In re Broadstripe, LLC,* 444 B.R. 51, 76-77 (Bankr. D. Del. 2010) (citing *Leonard v. General Motors Corp. (In re Headquarters Dodge)*, 13 F.3d 674, 679 (3d Cir. 1993).

[24] *Id.* at 77-78 (citing *Celotex Corp.*, 477 U.S. at 317-18).

[25] *In re Redden,* 216 B.R. 739 (D. Del. 1997) (dismissing debtor's motion for summary judgment because issue preclusion did not bar relitigation of fraud claims); *Peloro v. U.S.,* 488 F.2d 163 (2006) (granting summary judgment for trustee and company retained by trustee because issue preclusion barred plaintiff's conversion claims); *In re American MetroComm Corp.,* 303 B.R. 32 (D. Del. 2003) (On trust administrator's motion for summary judgment, Court held prior settlement agreement was res judicata as to proof of claim).

**DISCUSSION**

**A.    Claim and Issue Preclusion**

As the earlier action came into the District Court under diversity jurisdiction, the parties agree that New York preclusion law governs.  Indeed, "[f]or or federal court judgments in suits based on diversity jurisdiction, federal law requires us to look to the rules of preclusion of the state where the court that rendered the first judgment sat."[26]

**1.    Claim Preclusion**

*a.    Analysis*

The essence of *res judicata*, or claim preclusion, is "that a party who once has had a chance to litigate a claim before an appropriate tribunal usually ought not to have another chance to do so."[27]  In New York, *res judicata* applies if 1) the earlier decision was a final judgment on the merits, 2) plaintiffs in both suits are the same or in privity, and 3) the claims raised are the same.[28]  Here, the parties agree that the Second Circuit's grant of summary judgment in the AMC Computer litigation constitutes a final judgment on the merits.  This holding therefore focuses on the final two prongs of the *res judicata* test.

To prove the affirmative defense *res judicata*, a party must show that the previous action involved the plaintiffs or those in privity with them. New York courts have established that "privity does not have a single well-defined meaning. Rather, privity is

---

[26] *Radovich v. L.P. YA Global Investments, L.P.*, 13-3722, 2014 WL 2783277 (3d Cir. 2014).

[27] 47 Am. Jur. 2d Judgments § 464.

[28] *Penthouse Media Grp., Inc. v. Pachulski Stang Ziehl & Jones LLP*, 406 B.R. 453, 458 (S.D.N.Y. 2009).

'an amorphous concept not easy of application.'"[29]   However, the courts have turned to certain tests to help guide this determination.

One test New York courts have used to decide privity asks if the connection between parties is "such that the interests of the nonparty can be said to have been represented in the prior proceeding."[30]   Using this approach to rule on defendants' motion for summary judgment, the court in *Green v. Santa Fe Industries, Inc.,* found that there was no privity to make a prior action by minority shareholders, the Greens, binding in a later action brought by other minority shareholders, the Borgs.[31]   Central to the court's determination was that the Greens had sued on their own behalf and not in a shareholders' derivative suit.   Moreover, the Borgs' attempt at class certification in the earlier action had been denied.   The court concluded that the only relationship between the plaintiffs was "that they owned separate blocks of stock in the same company."[32] In any event, said the court, summary judgment was inappropriate because whether the parties were in privity was a question of fact.[33]

By contrast, in *Parkoff v. Gen. Tel. & Electronics Corp.,* the New York Court of Appeals held that:

> Because the claim asserted in a stockholder's derivative action is a claim belonging to and on behalf of the corporation, a judgment rendered in such an action brought on behalf of the corporation by one shareholder will

---

[29] *Buechel v. Bain*, 766 N.E.2d 914, 920 (N.Y. 2001) (quoting *In re Juan C. v. Cortines*, N.E.2d 1061(N.Y. 1997)).

[30] *Green v. Sante Fe Industries, Inc.*, 514 N.E.2d 105, 108 (N.Y. 1987).

[31] *Id*. at 108.

[32] *Id*.

[33] *Id*. at 109.

generally be effective to preclude other actions predicated on the same wrong brought by other shareholders.[34]

The limitation on this rule is where a judgment was the result of fraud or collusion, or where the shareholder to be barred was "frustrated in an attempt to join or intervene in the action that went to judgment."[35]  Note that the *Green* court acknowledged the decision in *Parkoff,* but differentiated a stockholders' derivative action from the case before it.[36]

Further, in *Ex rel. Spitzer v. Applied Card Sys., Inc.,* the settlement of a national class action in a California court prevented the New York Attorney General from later seeking additional restitution on behalf of in-state class members.[37]  As the New York court reasoned, "It is a 'familiar doctrine' that a class action judgment is binging upon class members who were adequately represented in the action."[38]  Arguing against privity, the Attorney General countered that his interest in protecting the public was not represented in the earlier proceeding.  He did not receive notice of the settlement and had no opportunity to object.  However, in addition to its broad language about the binding effect of a class action, the court noted that the petitioned-for relief was the same in both cases: "As to that measure of relief alone, we hold that there is privity."[39]

New York courts have also found privity in the following situations: a determination in a declaratory judgment action brought by a union was binding in a later

---

[34] 425 N.E.2d 820, 824 (N.Y. 1981).

[35] *Id.*

[36] *See Green*, 514 N.E.2d at 108.

[37] 894 N. E. 2d 1 (N.Y. 2008).

[38] *Ex rel. Spitzer v. Applied Card Sys., Inc.,* 894 N.E.2d at 13.

[39] *Id.*

action by a member; a judgment against an insured barred a subsequent action against his liability insurer; and a judgment in an action brought by a trustee in bankruptcy precluded a subsequent action by a creditor.[40]

Analyzing privity, another test asks if a party, though not formally involved, nevertheless exercised control over the earlier litigation.[41]  In *Watts* v. *Swiss Bank Corp.*, which involved competing claims to the proceeds of a joint bank account, the court found that the executors of a widow's estate were bound by an earlier decision in which executors' wives were parties.   The Court reasoned that the executors controlled litigation in both actions.  Central to the court's determination was the fact that the same law firm litigated both cases: "It is of singular significance that the two actions were prosecuted simultaneously by the same law firm."[42]  However, clarifying the decision in *Watts*, the *Green* court commented that what was significant wasn't merely the use of the same attorneys, but that the attorneys were directed by the same people in both cases.[43] That is, the same people controlled both cases *through* the same attorneys.

Applying another test, the court in *Juan C. v. Cortines* looked to whether parties, though arguably the same, appeared in the *same capacity* in both actions.[44]  It held that the New York City Corporation Counsel, having prosecuted a juvenile delinquency case, was

---

[40] *Green*, 514 N.E.2d at 108.

[41] *Watts v. Swiss Bank Corp.*, 265 N.E.2d 739, 743 (privity extends to "those who control an action although not formal parties to it").

[42] *Id.* at 744.

[43] *See Green*, 514 N.E.2d at 109.

[44] *James C. v. Cortines*, 679 N.E.2d 1061 (N.Y. 1997)

not in privity with school officials overseeing an internal disciplinary hearing.[45]  The court explained that a party to an earlier action generally is not barred from a later action in which that party appears in a different capacity.   However, the case before it involved two loosely related entities: the city prosecutor on one hand and the board of education president and school superintendent on the other.   The connection between them was that they were both government officials.   In addition, the court deferred to the "precise focus and pedagogical purpose" of the school setting.[46]   Finally, the Court of Appeals noted that preclusion law is not applied as liberally in criminal prosecutions as in civil cases.[47]

In *Syncora Guarantee Inc. v. J.P. Morgan Securities LLC*, a case factually similar to the present, the New York Supreme Court, Appellate Division, applied a totality of the circumstances test to discern the "actual relationship" between litigants.[48]   The case concerned a residential mortgage backed securities transaction. EMC Mortgage Corporation sponsored the securitization of thousands of mortgage loans.   Bear Sterns served as manager and underwriter, and Plaintiff Syncora insured the transaction.   In its insurance and indemnity agreement with Syncora, EMC made certain warranties as to the quality of its loan collateral and underwriting, due diligence, and quality control policies.   Further, EMC agreed to repurchase any loans that did not conform to its

---

[45] *Id*. at 1064-66.

[46] *Id*. at 1064.

[47] *Id*.

[48] *Syncora Guarantee Inc. v. J.P. Morgan Securities LLC*, 970 N.Y.S.2d 526 (2013).

warranties.    When the underlying mortgages began to default, Syncora conducted a review of the loan pool. Allegedly finding a large number to be non-conforming, Syncora invoked the repurchase provision.[49]

When EMC refused to comply, Syncora brought an action for breach of contract in the Southern District of New York. Syncora later moved to add fraud claims against both EMC and Bear Sterns. Plaintiff alleged that the two "acted 'in concert and as a single entity without regard to corporate formality' to perpetrate the alleged fraud."[50] The District Court, however, rejected plaintiff's motion as untimely.   Then came Syncora's failed attempt to relitigate the same fraud claims in state court: "In light of [the District Court's] decision, this action is barred by the doctrine of *res judicata*."[51]  Specifically, the NY Supreme Court argued that EMC and JP Morgan, the former Bear Sterns, were in privity. The Court reached this decision stating that plaintiff's "own allegations support a finding of privity for *res judicata* purposes."[52]

The final prong of the *res judicata* test is that the earlier- and later-filed claims are the same.  Two claims are the same where they arise from the "same transaction or series of connected transactions."[53] The use of this transactional test means that an earlier judgment "is dispositive not only of the theory of recovery alleged, but also of all other

---

[49] *Id.* at 528.

[50] *Id.* at 531.

[51] *Id.* at 530.

[52] *Id.* at 531.

[53] *Applied Card Sys., Inc.,* 894 N.E.2d at 12.

theories that might have been cited in support against the same wrong."[54] Thus, New York courts interpret claim preclusion broadly; the doctrine applies both to claims that were raised and those that could have been but were not.[55] The underlying objective is to prevent duplicative litigation.[56]

In determining whether claims are part of the same transaction, New York courts use a so-called pragmatic approach, examining "whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding and usage."[57]

Noting that plaintiff pleaded the same conduct in both a state petition and a later federal complaint, the court in *Sheffield* v. *Sheriff of Rockland County Sheriff Dept.* determined that the two claims were transactionally related. It did not matter that the allegations in the earlier complaint were broad (plaintiff alleged "minority discrimination" and a "hostile work environment") and those in the federal complaint included more specific examples of discriminatory conduct. Applying New York preclusion law, the Second Circuit held that the claims were part of the same series of connected transactions.[58]

---

[54] *Bd. of Managers of 195 Hudson St. Condo. v. Jeffrey M. Brown Assocs., Inc.*, 652 F.Supp.2d 463, 472 (S.D.N.Y. 2009); *See O'Brien v. City of Syracuse*, 429 N.E.2d 1158, 1159 (N.Y. 1981).

[55] 2 N.Y.Prac., Com. Litig. in New York State Courts § 16:16 (3d ed.).

[56] *Bd. of Managers*, 652 F.Supp.2d at 472.

[57] *Sheffield v. Sheriff of Rockland County Sheriff Dept.*, 393 Fed.Appx. 808, 811(2nd Cir. 2010) (quoting *Xiao Yang Chen v. Fischer*, 843 N.E.2d 723, 725 (2005)).

[58] *Id.* at 813.

In *Board of Managers of 195 Hudson St. Condo v. Jeffrey M. Brown Assocs., Inc.*, the S.D.N.Y. looked to the injury suffered to determine whether claims were transactionally related.  In the case before it, plaintiff sought to hold defendants liable for breach of contract in connection with alleged construction defects.  The earlier litigation, however, involved plaintiff's contribution and indemnification cross-claims for nonpayment of a project. Because the two were not based on the same harm, they did not arise out of the same transaction.[59]

b.    *Application*

A threshold issue to determining both claim and issue preclusion is whether Eugenia suing in S.D.N.Y., as an AMC Computer shareholder, is in privity with Eugenia suing in this court on behalf of Debtors.  There is a strong argument to make that Plaintiff has attempted to use each suit as a conduit for its own interests.  That is, the practical reality is that Eugenia consistently has been acting on its own behalf.  In that case, the analysis is straightforward:  Plaintiff Eugenia is in privity with Plaintiff Eugenia.  Even if one accepts that Eugenia was truly acting on behalf of AMC Computer before and Debtors now, there is privity because AMC Computer and Debtors are in privity.

The language in the earlier-filed, consolidated complaint for breach of fiduciary duty shows the nature of Eugenia's interest.  To begin, Eugenia proposes that, because Computer was insolvent, the defendants owed fiduciary duties both to Computer and to its creditors. Then, "[a]s a result of Directors' breaches of their fiduciary duties,

---

[59] *Board of Managers*, 652 F.Supp.2d at 475.

[Computer] and its creditors have been deprived of millions of dollars. The shareholders were unjustly preferred to the creditors.  Equity holders were paid during insolvency rather than creditors.  When creditors were paid, they were paid selectively and unfairly."[60]  Similarly, as Defendants point out, damages in this derivative portion of the prior action were measured in terms of the amount owed to Eugenia under the Credit Agreement.[61]  Indeed both suits come down to the fact that Computer defaulted on loan its obligations to Eugenia, resulting in a $10.7 million judgment that was never paid.

Even if the court takes each breach of fiduciary action as truly derivative, Eugenia itself emphasizes the link between Debtors, the current plaintiffs (derivatively), and AMC Computer, the previous plaintiff.  The present Complaint states, "[t]he Debtors were shareholders of AMC Computer Corp."[62]  Additionally, Eugenia argues and Defendants concede, "[t]he Debtors had a right to name a majority of Computer's 6-member Board of Directors."[63] At the time of the earlier litigation, Debtors owned roughly 36% of the equity of Computer.  And Eugenia, in one of its previous complaints, refers to Debtors as "two shell entities" that owned AMC Computer Corp. on behalf of Defendant Glaser.[64] Indeed a condition of Eugenia's loan to Computer was that Debtors would not "engage in any trade or business, or own any assets" other than stock in Computer.[65]  As in

---

[60] Complaint, *Eugenia v. Reale*, 05-CV-07262, ¶¶115-118 at 31.

[61] Defs.' Opp'n n. 15 at 11.

[62] Pl.'s Compl. ¶¶ 1 at 2.

[63] *Id.* ¶¶ 5 at 3; Defs.' Answer ¶¶15 at 3.

[64] Complaint, Eugenia v. Glaser, 06-CV-2997 at 3.

[65] Pl.'s Ex. 3 ¶¶ 6.20.

*Syncora,* Plaintiff's "own allegations support a finding of privity for *res judicata* purposes."[66] Finally, this Court has already decided that Debtors controlled Computer: "AMC Investors, LLC and AMC Investors II, LLC (the 'Alleged Debtors') are limited liability companies that control AMC Computer."[67]  Applying the NY Supreme Court's totality of the circumstances test to discern the "actual relationship" between parties, it is clear that Debtors and Computer are in privity.

There is also privity under the test that asks whether a plaintiff's interests were represented in the earlier action.  As shareholders, Debtors' interest in the present case is to recover for the alleged mismanagement and eventual collapse of AMC Computer.  In the previous litigation, Eugenia brought suit, as a shareholder, for the alleged mismanagement and eventual collapse of AMC Computer.  Both actions were brought to vindicate the interests of AMC Computer shareholders.

The holding in *Green* does not disturb the conclusion that there is privity between Debtors and AMC Computer.  In that case, the Greens brought the earlier action in an individual capacity and not as a derivative action on behalf of all Santa Fe shareholders.[68] Further, the Borgs' attempt at class certification had been denied.  Thus, the court held that the Borgs were not barred from later bringing their own suit as a separate block of shareholders.  Here, Eugenia brought its first breach of fiduciary action as an AMC Computer shareholder.  Holding that "an action brought on behalf of the corporation by

---

[66] *Syncora Guarantee Inc.,* 110 A.D.2d at 93.

[67] *In re AMC Investors, LLC*, 406 B.R. at 481.

[68] *Green*, 514 N.E.2d at 108.

18

one shareholder will generally be effective to preclude other actions predicated on the same wrong brought by other shareholders,"[69] *Parkoff* rather than *Green* is controlling in the present case.

Likewise, because the only relevant connection between the prosecutor and school officials in *Cortines* was that they were both governmental entities, that case is not directly applicable.  As Defendants' Opposition points out, "[*Cortines*] simply stands for the proposition that two subdivisions of New York state—one in the judicial branch and the other in the executive branch—were not in privity with each other…"[70]  Further, the *Cortines* court made repeated reference to the need for school officials to set their own priorities.  In the pending case, Debtors' sole business was holding equity in AMC Computer.  Thus, there is hardly a viable argument that Eugenia, suing on behalf of these shareholders, appears in a "different capacity" than in the previous action.

What is less clear is the extent to which either Debtors or Eugenia controlled the earlier litigation.  Plaintiffs in both actions have used Gibson, Dunn & Crutcher LLP.  Citing *Watts*, where the Court noted the use of the same law firm, Defendants therefore reason that "parties in privity [include] 'those who control an action although not formal parties to it.'"[71]  However, in reality, the analysis in *Watts* went far beyond looking at the attorneys involved.  The Court made extensive findings about how Sewal Watts coordinated legal representation in all relevant proceedings.  Defendants here

---

[69] *Parkoff*, 425 N.E.2d at 824.

[70] Defs.' Opp'n n. 14 at 10.

[71] *Id.* at 10 (quoting *Watts v. Swiss Bank Corp.*, 265 N.E.2d at 743).

acknowledge that there is room for additional fact-finding as to Eugenia's personal involvement in the prior and present actions.[72] More information would be needed about Debtors' involvement as well.

Even without *Watts*, there is more than enough case law pointing to privity between Eugenia on behalf of AMC Computer and Eugenia on behalf of Debtors. The cornerstone of the preclusion doctrines is flexibility. New York courts "have repeatedly explained that privity is not susceptible to a hard-and-fast definition."[73] At the very least, whether these parties are in privity is a genuine question of fact.

Furthermore, the prior and present actions clearly arise out of the same transaction. Both cases focus on the alleged mismanagement of AMC Computer during the life of the Credit Agreement, which was entered into in 2003 and terminated by Computer's default in 2005. Most of relevant factual allegations take place during this roughly two-year period. To a greater extent than the plaintiff in *Sheffield*, Plaintiff here pleads the same conduct—self-dealing, lack of ordinary corporate governance, and accounting improprieties—as in the earlier case. And unlike in *Board of Managers*, these successive actions are predicated on the same harm: judgment against AMC Computer in the amount of over $10 million.

Plaintiff has sought summary judgment that *res judicata* is not an available defenses. Plaintiff has the burden of proof on the motion to show that it is entitled to

---

[72] *Id.* n. 16 at 11.

[73] *Applied Card Sys., Inc.,* 894 N.E.2d at 11.

judgment as a matter of law.  If that is established the burden shifts to Defendants to establish the existence of a genuine issue of material fact.  Plaintiff's motion fails both as a matter of law and because these are genuine issues of material fact.

*Res judicata* applies if 1) the earlier decision was a final judgment on the merits, 2) plaintiffs in both suits are the same or in privity, and 3) the claims raised are the same.  If Plaintiff can show it is entitled to summary judgment on any of the three elements of *res judicata* the motion must be granted.  It cannot.  The parties agree that the earlier decision was a final judgment.  In addition, rather than Plaintiff being able to establish that the plaintiffs in both suits are <u>not</u> in privity the exact opposite is true.  The undisputed facts clearly indicate that the parties are in privity.[74]  At the very least, there is a genuine issue of material fact as to the "alternative" test of privity, i.e., whether the Debtors or Eugenia control both litigations.  Finally, the undisputed facts show that the prior and present actions arise out of the same transaction.  Thus, Plaintiff has clearly failed to show that *res judicata* is unavailable as an affirmative defense as a matter of law and its motion must be denied.

### 2.    Issue Preclusion

a.    *Analysis*

Under New York law, collateral estoppel bars future litigation, between the same parties or their privies, of issues that have already been determined in an earlier

---

[74] It is important to note that this Court is ruling on Plaintiffs' motion for summary judgment and not one filed by Defendants.  Thus, the Court cannot and does not find that Defendants are entitled to judgment on the issue of privity or any other element of this affirmative defense nor the defense as a whole (nor any other defense discussed *infra*).

proceeding.  Thus there are two requirements for collateral estoppel to apply: 1) "There must be an identity of issue which has necessarily been decided in the prior action and is decisive of the present action" and 2) "There must have been a full and fair opportunity to contest the decision now said to be controlling."[75]  The party invoking collateral estoppel bears the burden of demonstrating the first prong.  The party to be precluded must demonstrate the second.[76]

In evaluating collateral estoppel, and as with *res judicata*, New York courts have rejected a rigid test in favor a flexible, case-by-case approach.  And so the above requirements are meant merely as a starting point for a broader inquiry. [77]  The underlying policy is to avoid inconsistent results and to conserve judicial resources by preventing the relitigation of issues already decided.[78]

The first requirement for collateral estoppel is that an identical issue was necessarily determined in a prior action and is decisive in the pending.  An issue was "necessarily determined" if it was an essential element of a finding.  For example, intent to injure was necessarily determined, as to preclude relitigation, in a jury's conviction for first-degree assault.[79]  Further, in a dispute over legal fees, the New York Surrogate

---

[75] *Halyalkar v. Bd. of Regents of State of N.Y.*, 527 N.E.2d 1222, 1224 (N.Y. 1988).

[76] *See Id.*

[77] *See Buechel*, 766 N.E.2d at 919 ("The doctrine, however, is a flexible one, and the enumeration of these elements is intended merely as a framework, not a substitute, for case-by-case analysis of the facts and realities"); *Gilberg v. Barbieri*, 423 N.E.2d 807, 808 (1981) ("Because the doctrine is based on general notions of fairness there are few immutable rules").

[78] *Buechel*, 766 N.E.2d at 919; *D'Arata v. New York Cent. Mut. Fire Ins. Co.*, 564 N.E.2d 634, 639 (N.Y. 1990).

[79] *D'Arata*, 564 N.E.2d at 638-39.

Court's decree fixing the value of defendant-attorney's services was taken as a determination that the attorney had not committed malpractice.[80]  Thus even factual issues that are only implicitly relied upon in reaching a decision can be given preclusive effect.[81]  Similarly, factual issues are "decisive" if they tend to establish a claim.

However, indicating than an implicit determination might not be enough, the courts have also said that the issue to be precluded must have been *actually* determined. That is, "preclusive effect may be given to issues that were actually litigated, squarely addressed and specifically decided."[82]  If there has been a default judgment, a confession of liability, or a stipulation, then the issue has not been actually litigated.  In *Green*, the NY Court of Appeals further stated a plaintiff could not be barred from relitigating factual issues because the prior action was dismissed as a matter of law.  The Court's reasoning was that, under such circumstances, there has been no resolution of specific factual issues.[83]  Indeed "collateral estoppel does not apply to an unmixed question of law."[84]

The second requirement of collateral estoppel is that the party to be barred had a full and fair opportunity to contest the earlier proceeding.  In evaluating whether a party

---

[80] *Lefkowitz v. Schulte, Roth & Zabel*, 279 A.D.2d 457 (N.Y. 2d Dep't 2001).

[81] 2 N.Y.Prac., Com. Litig. in New York State Courts at § 16:22.

[82] *Ross v. Med. Liab. Mut. Ins.*, 551 N.E.2d 1237 (N.Y. 1990).

[83] *Green*, 514 N.E.2d at 108 ("District Court granted summary judgment to defendants and dismissed the Greens' Federal court action holding, as a matter of Delaware law, that the Greens had no claim for breach of fiduciary duty on party of the stockholders…Thus, the dismissal of the Greens' action involved the resolution of no factual issues…").

[84] *McGrath v. Gold*, 330 N.E.2d 35, 38 (N.Y. 1975).

has had its day in court, New York courts have turned to nine factors: the size of the claim, the forum of the prior litigation, the use of initiative, the extent of the litigation, the competence and experience of counsel, the availability of new evidence, indications of a compromise verdict, differences in the applicable law, and foreseeability of future litigation.[85]   It is the burden of the party arguing against preclusion to establish the absence of a full and fair opportunity.

Applying these factors to decide whether drivers, who were plaintiffs in the pending motor vehicle case, had a full and fair opportunity as defendants in passenger's earlier case, the NY Court of Appeals held,

> The present plaintiffs were full participants…All of these actions involved substantial sums. They did not involve claims for property damage amounting to but a few hundred dollars so that there would be no assurance that there was a vigorous fight on the issue of liability. Moreover, each of the plaintiffs had a full and fair opportunity to tell his story at the first trial in order to remove himself from liability or to cast it elsewhere. None claims a lack of adequate representation, and none has shown any prejudice because of the forum of the earlier action. Likewise, no prejudice is claimed because in the earlier action the passenger had any tactical advantages. Finally there is no assertion of any significant new evidence…It is, therefore, utterly fair to apply the doctrine of collateral estoppel here…[86]

Finally, a prerequisite to collateral estoppel is that both actions involve the same parties or their privies.  The analysis of privity under collateral estoppel is the same as under *res judicata.*

---

[85] *Schwartz v. Public Adm'r of Bronx County*, 246 N.E.2d 725, 729 (N.Y. 1969).

[86] *Id*. at 729-30.

b. *Application*

The Second Circuit found that AMC Computer was already insolvent when it entered the Credit Agreement. This factual finding was both "actually determined" and necessary to the Court's dismissal of Eugenia's claims for breach of fiduciary duty. It was explicitly mentioned in the Second Circuit's opinion that AMC was already insolvent. Thus, this is a specific finding of fact. Further, the Court makes clear that its decision rests squarely on this finding: "at the time the parties entered the Credit Agreement, AMC was already insolvent. As a result, Eugenia cannot demonstrate that thereafter defendants-appellees' mismanagement rendered the corporation insolvent. Eugenia's derivative fiduciary claims thus fail."[87]

Because the present action is also for breach of fiduciary duty, the timing of AMC's insolvency is decisive here. It does not matter that Plaintiff now seeks to pin the blame on the MapleWood entities (in addition to Glaser and Reale). If the company was already insolvent, then it is immaterial whether it was this set of defendants or the previous that was responsible for mismanaging AMC during the life of the Agreement. The bottom line is that, as decided by the Second Circuit, AMC's insolvency predated the Agreement and related events. Thus, the problem of causation and damages persists.

The next question is whether Debtors had a full and fair opportunity to participate in the earlier litigation. Most of the factors enunciated in *Schwartz v. Public Admŕ. of Bronx*

---

[87] *Eugenia VI Venture Holdings, Ltd. v. Glaser*, 370 Fed.Appx. at 199.

*Co.* come out in favor of Defendants.[88]  To begin, alleged damages in the prior lawsuit totaled over $10 million, which, given the current litigation, clearly was not an insignificant amount of money to Debtors.  The amount involved ensured that there was, in the words of *Schwartz*, "a vigorous fight on the issue of liability."[89] Debtors were also third-party defendants in Eugenia's earlier fraud action against Defendants Surinder Chabra, CEO of AMC Computer, Narinder Chabra, Computer's Senior Vice President of Operations, and Parvinder Chabra, wife of Surinder Chabra and AMC Computer shareholder.  That action contained many of the same factual allegations as the accompanying claims for breach of fiduciary duty. Debtors thus "had a full and fair opportunity to tell [their] story at the first trial in order to remove [themselves] from liability or to cast it elsewhere."[90]

Additionally, the fact that Gibson, Dunn & Crutcher is being used again indicates that Debtors do not question the adequacy of legal representation.  Debtors likewise do not question the impartiality of the earlier forum, nor do they suggest that the prior defendants had any tactical advantages.  On the other hand, current Defendants themselves suggest there is remaining evidence to discover.[91]  Taken together, this means that there is at least a genuine dispute as to whether Debtors have had their day in court.

---

[88] *Schwartz, supra.*

[89] *Id.* at 729-30.

[90] *Id.* at 730.

[91] Defs.' Opp'n at 3 ("Significant fact discovery remains outstanding, including discovery that is directly relevant to a determination of the privity between the plaintiff in the Prior Action and the plaintiff in the Present Action, making summary judgment inappropriate at this time").

Plaintiff has the burden of proof to establish it is entitled to judgment as a matter of law.  As with privity under *res judicata*, the undisputed facts lead not to the conclusion that there was no identity of issue which was necessarily decided in the prior action that is decisive of the present action but just the opposite.  As to the second question, i.e., whether there was a full and fair opportunity to contest the decision now said to be controlling, there is a genuine issue of material fact.  Thus, Plaintiff has failed to meet its burden that it is entitled to judgment as a matter of law that the affirmative defense of collateral estoppel is unavailable.

**B.    Timeliness**

Plaintiff also moves for summary judgment on Defendants' timeliness defenses. The question here is whether Plaintiff's breach of fiduciary duty claims are time-barred, even though Eugenia did not have standing to pursue these derivative claims during the applicable limitations period. Both sides agree that Delaware law governs this matter.

A court of equity is not bound by the legal statute of limitations.  However, "[e]quity follows the law and in appropriate circumstances will apply a statute of limitations by analogy."[92]  Because breach of fiduciary duty claims are "equitable claim[s] bearing a close resemblance to…legal claim[s],"[93] a statute of limitations analysis is appropriate here.

---

[92] *In re Lyn*, 483 B.R. 440, 452 (Bankr. D. Del. 2012).

[93] *Vichi v. Koninklijke Philips Electronics N.V.*, No. CIV.A. 2578-VCP, 2009 WL 4345724, at *16 (Del. Ch. 2009).

Delaware law sets a three-year statute of limitations for breach of fiduciary duty.[94] This limitations period runs from the date of the alleged harm.[95]  Here, Plaintiff alleges that, between January 2003 and May 2005, Defendants' mismanagement of AMC Computer harmed AMC Investors II.  However, Plaintiff did not bring this action until June 2011.  Unless Plaintiff demonstrates a basis for tolling the three-year statute of limitations, its claims are barred as untimely.

Under Delaware law, there are three bases for tolling the statute of limitations: (1) inherently unknowable injuries, (2) fraudulent concealment, and (3) equitable tolling following a breach of fiduciary duties.[96]  However, "[u]nder all three tolling doctrines, the statute begins to run 'upon the discovery of facts constituting the basis of the cause of action *or* the existence of facts sufficient to put a person of ordinary intelligence and prudence on inquiry which, if pursued, would lead to the discovery of such facts.'"[97]

In *Bren v. Capital Realty Grp. Senior House., Inc.*, the Chancery Court clarified that a plaintiff's lack of standing is not an independent basis for tolling the statute of limitations.[98] There, as here, the creditor of a limited entity brought a derivative action alleging breach of fiduciary duty.  The plaintiff argued that its claim could not have

---

[94] 10 Del. C. § 8106; *Halpern v. Barran*, 313 A.2d 139, 141 (Del. Ch. 1973).

[95] *Bren v. Capital Realty Grp. Senior Hous., Inc.*, No. CIV.A. 19902-NC, 2004 WL 370214 (Del. Ch. 2004).

[96] *Vichi* at 17.

[97] *Id.* (quoting *Wal-Mart Stores, Inc. v. AIG Life Ins.* Co., 860 A.2d 312, 319 (Del.2004)) (emphasis in original); *In re Tyson Foods, Inc.*, 919 A.2d 563, 585 (Del. Ch. 2007) ("no theory will toll the statute beyond the point where the plaintiff was objectively aware, or should have been aware, of facts giving rise to the wrong").

[98] *Bren* at 4.

accrued until the partnership became insolvent and creditors obtained standing. Rejecting this reasoning, Vice Chancellor Parsons held,

> If the Court were to accept [the] argument that the statute of limitations runs from the time that a fiduciary duty is owed to a particular plaintiff rather than from the time of the harm to the entity, creditors of insolvent entities could, upon insolvency, assert transactional challenges that otherwise would be time barred.[99]

It also appears that Delaware courts do not recognize adverse domination—when a corporation's board is controlled by culpable directors— as a basis for tolling a breach of fiduciary duty action.[100]

The record on summary judgment does not justify tolling the statute of limitations. Eugenia clearly knew about Defendants' conduct by June 2005, when it commenced the litigation in the Southern District of New York. Therefore, the tolling mechanisms recognized by Delaware courts do not apply. In addition, Section 108(a) of the Bankruptcy Code is not available because Plaintiff filed its involuntary bankruptcy petition in September 2008, after the limitations period expired. Absent establishing that it is entitled to judgment as a matter of law that tolling is available, Plaintiff cannot prevail on its motion.

## CONCLUSION

For the reasons set forth above, the Court will deny Plaintiff's motions for partial summary judgment. An order will be issued.

---

[99] *Id.*

[100] *In re Marvel Entm't Grp., Inc.*, 273 B.R. 58, 76 (D. Del. 2002) ("Nor can the court find any Delaware case that recognizes the adverse domination doctrine as a tolling mechanism")